SAMUEL D. IRVIN, administrator, plaintiff in error, *vs*. WILLIAM H. TURNER, defendant in error.

1. A promissory note, or other debt, is taxable, under the laws of this State, according to its market value in fact, and not according to the opinion its holder may have of its market value.

2. A note or debt upon a solvent person is, presumptively, of some market value, and if it has not been given in for taxes at all, the verdict of the jury finding that the legal taxes due thereon have not been paid will not be disturbed, there being no proof that the debt had no market value.

WARNER, Chief Justice, dissented.

Relief Act of 1870. Constitutional law. Tax affidavit. Before Judge HARRELL. Terrell Superior Court. November Term, 1871.

An execution, in favor of Samuel D. Irvin, administrator *de bonis non* upon the estate of Thomas J. Johnson, deceased, based upon a judgment obtained upon a note dated June 15th, 1857, due on January 1st next thereafter, for $7,650 00, with a credit thereon of $4,493 61, of date March 5th, 1868, against John T. Howard, William H. Turner and James W. Henderson, was levied, on August 4th, 1870, on certain real estate as the property of William H. Turner. To the execution was attached the affidavit that all taxes due thereon had been duly paid. The defendant arrested the sale under the levy by filing an affidavit as to losses incurred by reason of the war. Upon the trial, this affidavit was, on motion, stricken, because it failed to connect the plaintiff with the losses occasioned to defendant. Defendant then, by leave of the Court, and over

Irvin *vs.* Turner.

the objéction of the plaintiff, amended his said affidávit by filing two additional counter-affidavits : in the first of which he set up the fact that $2,000 00 of the debt sued on was for the hire of slaves; in the second of which he denied that all legal taxes chargeable by law on said indebtedness had been paid.

To the order allowing said amendments plaintiff excepted, and assigns the same as error.

Upon the trial of the issue formed as to the payment of taxes upon the claim sought to be enforced, it appeared, from the evidence, that Thomas J. Johnson died in January or February, 1861, leaving a will, and Lewis G. Sutton was appointed administrator, *cum testamento annexo,* on March 11th, 1861 ; that Lewis G. Sutton died in 1864, and plaintiff was appointed administrator *de bonis non* on December 12th, 1864 ; that the last administrator (the plaintiff) had not had funds in hand with which to pay taxes; that all the assets of the estate are in the pending litigation ; that, in 1865, no taxes were assessed or collected by the State; that the only taxes ever paid by plaintiff were fifty cents for the stamp to place on the declaration, and full stamp duty on the note; that the claim sued on was considered by plaintiff of very doubtful solvency since 1866 ; that Henderson moved out of the State before the war; that Howard has never been considered solvent since he lost his slaves and went into bankruptcy, in 1868 ; that the defendant, Turner, was the only one left with any property at all; that defendant would not pay until forced, and plaintiff knew he would avail himself of all advantages of the relief legislation ; that plaintiff has not considered the debt solvent; that defendant had the land levied on all the time in his possession, but plaintiff had doubts whether he would ever be enabled to bring it to sale; that defendant was worth between $10,000 00 and $20,000 00 ; that defendant is in possession of the same land now which he owned when the debt was created.

Counsel for plaintiff requested the Court to charge the jury, that the Act of the Legislature, known as the Set-off and Re-

Irvin *vs.* Turner.

coupment Act, approved October 13th, 1870, was unconstitutional and void.

The Court refused to charge as requested and plaintiff excepted, and assigns said refusal to charge as error.

Counsel for plaintiff further requested the Court to charge, that if they believed, from the evidence, that such debt was of doubtful solvency, or that the plaintiff did believe, or had good reason to believe, that said debt was not a solvent debt, that then he was not required to return it for taxation, or to pay taxes thereon.

The Court refused to charge the jury as requested, but instead thereof charged the jury as follows, to-wit: "If you believe, from the evidence, that this debt was of any value whatever, and that the plaintiff did not return it for taxation and pay taxes upon that value, it will be your duty to find for the defendant."

To which refusal to charge, and to charge as given, plaintiff excepted and assigns the same as error.

The jury returned a verdict for the defendant, upon the ground that all legal taxes had not been paid. Whereupon, plaintiff in error filed his bill of exceptions, and assigns the rulings aforesaid as error.

LYON & IRVIN; C. B. WOOTEN, for plaintiff in error.

A. HOOD; F. M. HARPER; CLARK & GOSS, for defendant.

McCAY, Judge.

There is no law of this State taxing notes or debts on any other basis than other property. Section 797 of the Code declares that "all real and personal estate, whether owned by individuals or corporations, resident or non-resident, is liable to taxation, unless specially exempted." Section 801 says "all property, or other thing of value, subject to taxation, must be given in by the tax-payers as hereinafter set forth, at its fair market value, and must be taxed according to its value," etc. It seems to follow, from this language, that a promissory note, if it be a thing of value, is to be taxed at

Irvin *vs.* Turner.

that value, and is to be given in by the tax-payer at its fair market value, whatever that may be. It has been argued that as there is a provision pointing out how any return made by a tax-payer may be attacked—section 835—that this is the only way, and that the return of the tax-payer is conclusive unless thus attacked. It will, however, be noticed that section 835 only applies to undervaluations. But here the property was not given in at all, *at any valuation!* It is true that section 850 authorizes the receiver to assess a value, when the property is not returned, if he can find any such property, or knows of it. But we are of opinion that these are not the only methods the State may take to insure the giving in, and proper valuation of property. We have discussed this matter fully in principle in other cases, and we put the whole in the following:

The State has a right to its taxes, and to take its own method of finding the property and ascertaining its value. It is not shut up to any particular mode, and until the legal tax is in fact paid, it may add remedy after remedy until the tax-payer complies by paying; that one remedy fails, so far from being a reason why no other can be tried, it is the very best sort of a reason. The question in this case was, has the tax been paid? This the plaintiff undertook to show, by showing that at the time the tax was due he did not consider the debt of any value, and did not, therefore, give it in. I doubt if this proved anything. The question was, had it any value? What he thought then, might be a good reason why he did not give it in, but if he now thought it had *then* any market value, it was his duty now to give in and pay the tax. There was proof that the maker of the note was solvent. The records of the Court show that the holder of the note was pressing it as though it had value, and there is no proof that in fact the note had no market value. The statement by Mr. Irvin, of what he thought, at the several dates the tax was due, is not the question. Was there any proof before the jury that the note had no market value at those dates? Here was a note purporting to be worth so much.

Irvin *vs.* Turner.

The maker is solvent; *prima facie,* it is worth what it calls for. Its true market value is the measure of its tax. It is a fair presumption that its value is what it calls for, unless it be shown to the contrary. The value fixed by the oath of the tax-payer answers the purpose of making up the digest. But it is not conclusive. Each man is bound to give in his property at its fair market value. What he thinks it worth is his measure of its value; but that may be a very untrue one. It is notorious that this is very commonly not the true value. The true value is the taxable value, and the State, if it fails to get at that value by one method, may take another. The jury have found the tax unpaid, and we think rightly under the proof. It was never given in at all; it has paid nothing; the proof that it has some value is very strong, and that is all the jury have found.

The verdict is simply that the tax is unpaid. The judgment still exists. The plaintiff may give in and pay the tax now. It is complained that he does not know what to pay. This is easily said; but it must be that it has some value. Men do not spend the time and labor and expense he is spending on property that is worthless. Let him fix a value, give in and pay the taxes on that value. If his return is attacked, he has then an issue, and he is in a position to ask the jury to find what is, and was, the value.

Under our law, the jury are not restricted to a mere verdict for the plaintiff or defendant. If the issue is made and justice requires, the Judge may, on the demand of the plaintiff, instruct the jury if they think, from the evidence, the tax— the tax on the market value—has not been paid, to find what was the market value, according to the proof, for each year. As it stands, we think the verdict right. Let the plaintiff give in and pay the tax; he can then go on. Until he does this, the law says he cannot go on.

Judgment affirmed.

MONTGOMERY, Judge, concurred, and WARNER, Chief Justice, dissented, but furnished no opinions.